UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 2:20-CR-00137-01** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **TREVIONE JAMES TERRY (01)** | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM ORDER

Before the court is a Motion in Limine [doc. 140] filed by defendant Trevione James Terry, seeking to exclude character evidence under Federal Rule of Evidence 404(b). The government opposes the motion. Doc. 246.

### I.
#### BACKGROUND

The defendant is charged in this court with one count of interference with commerce by robbery, a violation of 18 U.S.C. § 1951(a). The charge relates to his alleged involvement in the robbery of a jewelry store in Lake Charles, Louisiana, on June 8, 2020. In that incident, according to the government, a masked individual entered the store with a handgun and ordered the employees to the ground. Doc. 130. He was followed by three other masked individuals, who broke cases with hammers and robbed the store of thirty-four Rolex watches, which they stowed in a gray and red backpack. *Id.* The suspects fled in a white Porsche registered to codefendant Joshua Evans and drove to a local casino, where they were met by a gray Chevrolet Impala registered to the girlfriend of codefendant Cary S. Nimmons, Jr. They were tracked, however, by the Lake Charles Police Department

("LCPD") using a GPS device and silent alarm in the case of one of the watches. According to the government:

> While searching the area, LCPD officers located the four defendants. The real-time GPS tracking information led officers to a shed on the residence of 1501 Pryce Street. Inside of the shed, Officers located Trevione TERRY and [Joshua] EVANS hiding among the items in the shed. Officers also located in their immediate possession the gray and red backpack used in the robbery. The backpack contained thirty-two (32) of the thirty-four (34) stolen Rolex watches. Cary S. NIMMONS was located under a carport at 1517 Pryce Street, less than 250 feet from where EVANS and TERRY were located. Finally, officers located Johnson MOORE behind a residence on 313 S. Lyons Street, less than 200 feet from where EVANS and TERRY were located.

Doc. 130, pp. 2–3. The gray Impala was also recovered "near the 1500 block of Pryce Street area where all of the defendants were apprehended." *Id.* at 3.

The four defendants, including Terry, were charged in this court by complaint filed on June 19, 2020, and indicted one month later. Docs. 1, 17. The defendant pleaded not guilty to the charge. Doc. 32. The case was originally set for trial on February 1, 2021, but has been certified as complex and continued multiple times. Terry's three codefendants have all pled guilty.

Under the court's Pretrial Criminal Scheduling Order, the government's deadline for disclosing Rule 404(b) evidence was set at 60 days before trial. Doc. 33. On March 31, 2022, the trial date for Terry was reset for October 31, 2022. Doc. 116. The government filed a Notice of Intent to Use 404(b) Evidence on October 13, 2022. Doc. 130. There it outlined its intention to introduce evidence regarding Terry's involvement in four other jewelry store robberies between May 2018 and May 2020. *Id.* The offenses are supported by police reports, summarized below:

1. **Watches by Paulin Theft**

On May 2, 2018, an unknown individual ("Suspect 1") called Watches by Paulin in Houston, Texas, and asked about the store's inventory of Rolex watches. Doc. 130, att. 1, p. 6. Suspect 1 and Suspect 2 arrived later that day and asked to see a Rolex. Suspect 2 left the store while Suspect 1 asked to be shown another watch, then grabbed the watch from the employee's hands and fled with Suspect 2 in a black car. *Id.* After speaking with witnesses and reviewing security video, officers identified Suspect 1 as Trevione Terry. *Id.* at 22–29. They also noted that the store had received calls from two phone numbers that morning, with one being Terry's cell phone. *Id.* at 29.

2. **Nederland Jewelers Theft**

On January 24, 2019, two individuals (Suspect 1 and Suspect 2) entered Nederland Jewelers, a jewelry store located in Nederland, Texas, and asked to see a Rolex watch. Doc. 130, att. 2, p. 5. The employee showed them the watch and was returning it to the case when Suspect 2 reached over the counter and jerked it out of her hands. Both suspects then ran out of the door and left in a car. *Id.* Terry's cell phone was recovered from the parking lot. *Id.* at 6, 12. After reviewing security footage, witness statements, and other evidence, officers identified Terry as Suspect 1.

3. **Zales Jewelers Robbery**

On February 15, 2019, three individuals (Suspects 1–3) entered a Zales Jewelers store in Houston, Texas. They broke the display cabinets with hammers, and stole several diamond rings. Doc. 130, att. 3, pp. 1–5. The employee pressed the panic button and ran

out of the store, where she was able to take video of the suspects as they fled. *Id.* at 5. Another witness identified the license plate on the suspects' getaway car. After speaking with witnesses and reviewing video surveillance, officers identified six suspects. *Id.* at 29. It is unclear from the report if and/or how Terry was positively identified as one of the three perpetrators of the robbery or what is involvement was otherwise.

   4. **Korman's Fine Jewelry Robbery**

On May 7, 2020, five individuals wearing masks entered Korman's Fine Jewelry in Austin, Texas, and robbed the store at gunpoint. Doc. 130, att. 5, p. 16. A security officer was shot and there were over ten witnesses on the scene. *Id.* at 16–17. The police report does not identify Terry as one of the suspects, but the government states that it will call a cooperating witness "who has intimate knowledge of TERRY and MOORE's involvement in the robbery." Doc. 130, p. 6 n. 6.

Terry moved to exclude evidence of these incidents, arguing that (1) the notice was filed after the court's deadline, (2) the government has not presented sufficient proof of the uncharged conduct, and (3) the conduct fails the two prongs of the *Beechum* test, infra, as to relevance and undue prejudice. Doc. 140. Trial was then continued due to ongoing plea negotiations and reset for March 2024. Doc. 235. The court reset briefing deadlines on defendant's motion and the government has now filed an opposition. Doc. 246.

## II.
## LAW & APPLICATION

### A. Governing Law

#### 1. Motions in Limine

Evidence should only be excluded in limine where it is "clearly inadmissible on all potential grounds." *Hull v. Ford*, 2008 WL 178890, at *1 (S.D. Tex. 2008) (citing *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993)). "Motions in limine are frequently made in the abstract and in anticipation of some hypothetical circumstance that may not develop at trial." *Looney Ricks Kiss Architects, Inc. v. Bryan*, 2010 WL 5174440, at *1 (W.D. La. Dec. 15, 2010) (quoting *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980)). Evidentiary rulings, however, "should often be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in proper context." *Id.*; *accord Baxter v. Anderson*, 277 F.Supp.3d 860, 863 (M.D. La. 2017). Additionally, motion in limine rulings "are not binding on the trial judge . . . and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 764 n. 3 (2000).

#### 2. Rule 404(b)

Evidence is generally admissible so long as it is relevant and not barred by the Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. Fed. R. Evid. 402. Among other grounds, the court may exclude relevant evidence where its probative value is substantially outweighed by a danger of

unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *Id.* at 403.

Rule 404(b) provides that evidence "of a crime, wrong, or other act" is inadmissible as character evidence in order to show that a person acted in conformity with that character, but that such evidence may be admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1)–(2). "At the threshold, however, evidence of an uncharged crime or 'other act' must be sufficient to support a finding that the crime or act actually occurred." *United States v. Smith*, 804 F.3d 724, 735 (5th Cir. 2015). Accordingly, the government must offer sufficient proof of the offense or it will be excluded as irrelevant. *United States v. Gutierrez-Mendez*, 752 F.3d 418, 423 (5th Cir. 2014). Proof of an uncharged offense is sufficient if a "jury could reasonably find . . . by a preponderance of the evidence" that the defendant committed the act. *Id.* at 424 (citing *Huddleston v. United States*, 485 U.S. 681, 690 (1988)).

If the government meets this bar, the court then applies the two-part *Beechum* test. *United States v. Kinchen*, 729 F.3d 466, 471 (5th Cir. 2013) (citing *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978)). First the court must determine whether the evidence is relevant to an issue other than the defendant's character. *Id.* Then it must decide whether the probative value of the evidence is substantially outweighed by the risk of undue prejudice and whether it meets the other requirements of Rule 403. *Id.*

The court may look to several factors in evaluating the prejudicial effect of such evidence, including: (1) the government's need for such evidence, (2) the similarity

between the prior bad act and the charged offense, (3) the amount of time separating the two offenses, and (4) the availability of limiting instructions. *United States v. Sanchez*, 988 F.2d 1384, 1394 & n. 14 (5th Cir. 1993) (citing *Beechum*, 582 F.2d at 915). Probative value "must be determined with regard to the extent to which the defendant's unlawful intent is established by other evidence, stipulation, or inference." *United States v. Pruett*, 681 F.3d 232, 245 (5th Cir. 2012). The prejudice to defendant also increases to the degree the extrinsic offense resembles the charged offense. *United States v. Cockrell*, 587 F.3d 674, 679 (5th Cir. 2009).

### B. Application

At issue in this motion are the defendant's alleged, uncharged participation in four prior jewelry store robberies in the two years leading up to the robbery charged in this offense. Because of the continuances of the trial date, defendant's arguments relating to the government's failure to comply with the scheduling order and his resulting lack of notice are rendered moot. Instead, the court considers the parties' arguments on proof, relevance, and Rule 403.

#### 1. Sufficiency of proof

The government has offered sufficient proof for a jury to reasonably find, by a preponderance of the evidence, that Terry was involved in the 2019 incidents at Watches by Paulin and Nederland Jewelers. The police reports identify him as a suspect and provide multiple bases, including eyewitnesses, security footage, and his cell phone/telephone call linking him to the incidents. As yet, however, there is insufficient proof to support his involvement in the Zales Jewelers robbery. Likewise, the court cannot evaluate the

sufficiency of proof for his involvement in the Korman's robbery until it has reviewed the proposed testimony of the cooperating witness. Nevertheless, it will continue to evaluate the relevance of all incidents under *Beechum* assuming that the government may be able to support the latter two as well.

### 2. Relevance

As for relevance, the government contends that these incidents are probative of intent, knowledge, identity, and lack of mistake or accident. Evidence of a defendant's involvement in prior robberies with similar modus operandi and reasonable geographic and temporal proximity is generally admissible in his prosecution for another robbery, in order to prove these elements. *E.g.*, *United States v. Guerrero*, 169 F.3d 933, 939 (5th Cir. 1999); *United States v. Ramirez*, 460 F.App'x 333, 335 (5th Cir. 2012). The incidents here are all jewelry store thefts or robberies occurring within two years of the charged offense. Two of these incidents targeted Rolex watches, which were also targeted in the charged offense. While neither the Zales robbery nor Korman's robbery targeted Rolexes, both displayed a similar modus operandi to the smash-and-grab operation charged here. Additionally, with the exception of the Korman's robbery, all of the incidents occurred within approximately 150 miles of the jewelry store where the charged offense occurred, between Houston and Lake Charles. Given the similarities, they are highly probative of the defendant's identity and involvement in the charged offense.

### 3. Rule 403 determination

The court must determine whether the evidence's probative value is substantially outweighed by the risk of undue prejudice by considering the government's need for the

evidence, the similarity between the offenses, the amount of time separating them, and the availability of limiting instructions. Terry maintains that the government has no need of the evidence given the overwhelming admissible evidence linking him to the charged offense. The court notes, however, that all the evidence described above is circumstantial. Additionally, so far there is no positive eyewitness identification of Terry at the scene of the robbery or testimony from his codefendants. He was apprehended in the same building as the Rolexes and the bag that had carried them, but some time after the robbery and several miles away. The court reserves the right to revisit its determination after considering other evidence at trial, but considers at this point that the government may still have need of additional proof to establish Terry's identity, intent, knowledge, and lack of mistake or accident.

As for the similarity of the incidents, they share several factors with the charged offense—all incidents targeted jewelry stores, all incidents were coordinated with at least one other suspect, two apparently targeted Rolex watches in particular, two were smash-and-grab robberies like the charged offense, and all of the incidents except the Korman's robbery occurred within about 150 miles of Lake Charles, where the charged offense occurred. This increases their probative value as well as their potential for prejudice. *United States v. Juarez*, 866 F.3d 622, 628 (5th Cir. 2017). The risk of undue prejudice must substantially outweigh the probative value of the evidence, however. Given the multiple links between the incidents and the charged offense, they are highly probative of the factors described above. Additionally, "[p]robative value is augmented by a lack of temporal remoteness between the offenses." *Id.* (cleaned up). The Fifth Circuit has held that evidence

of misconduct committed less than three years before the charged crime is admissible. *United States v. Adair*, 436 F.3d 520, 527 (5th Cir. 2006). Accordingly, both of these factors support admission.

Finally, limiting instructions are available on the proper use of 404(b) evidence. "Juries are generally presumed to follow their instructions and [the Fifth Circuit] has affirmed that limiting instructions 'greatly minimize any risk of undue prejudice posed by the admission of extrinsic evidence.'" *United States v. Mayweather*, 2023 WL 195414, at *1 (5th Cir. Jan. 17, 2023) (quoting *United States v. Garcia Mendoza*, 587 F.3d 682, 689 (5th Cir. 2009)). Balancing all of these factors, the court finds that the probative value of the evidence is great and not substantially outweighed by the risk of undue prejudice, confusion of the issues, misleading the jury. The court reserves its determination on the sufficiency of proof as to the Zales and Korman's incidents until trial, however. It also reserves the right to revisit this determination depending on the weight of other evidence of guilty introduced by the government.

### III.
#### CONCLUSION

For the reasons stated above, **IT IS ORDERED** that the motion [doc. 140] be **DENIED.**

**THUS DONE AND SIGNED** in Chambers on the 27th day of October, 2023.

JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE